IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW B. MELNICK, individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| BETFAIR INTERACTIVE US, LLC, d/b/a FANDUEL SPORTSBOOK, an Illinois limited liability company, | ) ) ) ) | **PLAINTIFF DEMANDS TRIAL BY JURY** |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, ANDREW B. MELNICK, individually, and on behalf of all others similarly situated, by and through his undersigned attorneys, based upon personal knowledge with respect to himself, on information and belief derived from investigation of counsel, and review of public documents as to all other matters, complains against Defendant, BETFAIR INTERACTIVE US, LLC, d/b/a FanDuel Sportsbook ("FanDuel"), as follows:

### Introduction

1. This case involves an unlawful pattern and practice of unfair and deceptive trade practices on the part of FanDuel, an on-line sports gaming platform with a membership, upon information and belief, in excess of 6,000,000 people, spanning across (10) ten states, of providing materially false and misleading information to customers while making wagers on live sporting events via its digital platform.

2. More specifically, while purporting to provide its customers with real-time, live sports game data, FanDuel regularly understates the time remaining in a given live sporting event in order to induce its customers to make wagers that they are more likely to lose, and/or that are riskier, than if they were being provided accurate, real-time information in connection with their live wagering.

3. Plaintiff seeks both damages for himself, as well as the Multi-State Class and, alternatively, for the State-Wide Classes or sub-classes, and an order enjoining the further operation of the FanDuel platform until its app (the "App") as represented, *accurately* reflects the time remaining in a given live sporting event.

## The Parties

4. Plaintiff, ANDREW B. MELNICK ("Melnick"), is an individual and citizen of the State of Illinois residing at 906 Oxford Road, Deerfield, Illinois 60015. Melnick is a customer/member of FanDuel.

5. On March 2, 2021, Melnick attempted to contact customer service of FanDuel via telephone to notify FanDuel of the unfair and deceptive acts and practices alleged herein and attempted to obtain a full refund; all to no avail.

6. By written correspondence dated March 2, 2021, Melnick exercised his right to opt-out of the paragraph of the "Terms of Use" of FanDuel otherwise purportedly requiring arbitration of disputes and a Class Action Waiver ("Terms and Conditions"). *See* Terms of Use at Paragraph 15.6. (A true and

correct copy of Melnick's correspondence dated March 2, 2021, and the Terms of Use of FanDuel are attached hereto as Exhibits "A" and "B", respectively, and made a part hereof.).

7. While the Terms of Use, at Paragraph 15.7 contain a forum selection clause for courts located in New York and a choice law provision for the application of New York law, there are public interest factors which strongly outweigh the enforcement of that provision and the State of New York has little or no connection to this dispute.

8. Defendant, FanDuel, is a limited liability company organized and existing under the laws of the State of Illinois, with its place of business located at 6701 Center Drive West, Suite 800, Los Angeles, California 90045.

9. FanDuel has been operating its sports-betting platform since approximately July 2020. (the "relevant period").

10. FanDuel's two managers are Samuel Levin and John Hindman, both with offices located at 6701 Center Drive West, Suite 800, Los Angeles, California 90045.

11. Plaintiff is currently unaware of the identities of those holding membership interests in FanDuel as that information is not publicly available.

12. FanDuel is a gaming company that offers sportsbook, daily fantasy sports, online casino and online horse race betting products through its free downloadable app, and has been offering the same in ten (10) states since approximately July 2020.

13. FanDuel accepts bets in the States of Illinois, New Jersey, Pennsylvania, West Virginia, Indiana, Iowa, Colorado, Tennessee, Virginia and Michigan through the FanDuel online sportsbook and betting app that represents the evolution of daily fantasy sports sites into full-on sports and live wagering. The FanDuel app is available for download on the iPhone smartphone, iPad Touch handheld computer, the iPad tablet computer and android operating systems via iTunes App Store and Google Play store. FanDuel does not offer on-line sports wagering to citizens or residents of the State of New York.

14. FanDuel permits its members to make a number of types of wagers on its platform including, but not limited, to "Totals" or what are referred to as "Unders" and "Overs" on a live basis; while the sporting event is underway.

### Jurisdiction and Venue

15. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds $5,000,000.00 exclusive of interest and costs, there are more than 100 putative class members and minimal diversity exists because many putative class members are, upon information and belief, citizens of different states than FanDuel.

16. This Court has personal jurisdiction over FanDuel because it is authorized to and regularly conducts business in the State of Illinois.

17. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because FanDuel resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

### Facts Specific to Plaintiff

18. On or about February 26, 2021, Plaintiff downloaded the app for FanDuel on his cellular android smartphone from the Google Play store.

19. On or about February 26, 2021, Plaintiff deposited $100.00US into his account on FanDuel for the purpose of making wagers on the FanDuel platform; which monies were immediately available for wagering on live sporting events via the App.

20. On February 28, 2021, Plaintiff began placing wagers on the FanDuel platform focusing on men's NCAA college basketball where, after the start of the sporting event, he made live wagers on the "Unders."

21. The "Totals" or "Over/Under" bet is a wager in which a sportsbook will predict a number in a given game (usually the combined score of the two teams), and the bettor's wager that the actual number in the game will be either higher or lower than the number.

22. The betting platform on FanDuel purports to display on the customer's smartphone, via the App, the time elapsed, score and the odds of a given wager in a given sporting event on a real-time basis.

23. By way of example, below are photographs of two (2) screen shots from the FanDuel platform of the *New Orleans v. Incarnate Word* NCAA men's college basketball game taken on March 1, 2021, the first **at 8:52 p.m**., and the second a minute later **at 8:53 p.m**. The first shows six (6) minutes **remaining in the second half of the game** and the second shows eight (8) minutes **remaining in the second half of the same game** when wagers were still being accepted on the "Overs" and "Unders":





24. Based upon the information provided on the FanDuel platform, on February 28, 2021, Melnick made a number of wagers on the "Totals" or "Unders" betting that the combined score or Total of the two (2) competing men's college NCAA basketball teams would be **less** than a given number. (the "Wagers").

25. Plaintiff made all of the Wagers after the sporting events had begun and, in many cases, based upon false reporting by FanDuel of the elapsed time and, in some cases, the then scores of the live sporting events.

26. The accuracy of the real-time information provided by FanDuel on its platform and displayed at the time Plaintiff placed his live wagers was critical to the determination of the risk and reward associated with a given wager and whether to place his bet on the "Over" or the "Under" option.

27. After placing a number of the live Wagers, made after the start of the particular sporting events, and losing over $50US, Plaintiff discovered that the purportedly real-time information provided to him by FanDuel on the FanDuel platform was repeatedly false and materially so.

28. For example, Plaintiff discovered that the time elapsed in sporting events, in particular men's NCAA college basketball, is frequently materially understated on the real-time display on the FanDuel platform in a range of 5 to 35 percent less than the actual time remaining in the sporting event,

making the Wagers on the "Under" during the game appear to be a far better bet than they otherwise actually are.

29. Similarly, in some instances, the score reported on the FanDuel platform was inaccurate and materially different from the actual score in relation to the time shown left in the game at the moment when Plaintiff placed the Wagers.

30. As a result of the above-mentioned deceptive, dishonest and unfair pattern and practices of FanDuel, Plaintiff and, upon information and belief, hundreds of thousands of other members of FanDuel, have lost millions of dollars in wagers as a proximate result of the same - as well as having paid fees to FanDuel for the privilege of placing their wagers.

31. More specifically, Plaintiff and the Class have been damaged as a result of this pattern and practice as they have made and lost wagers that they would not have made had they known the actual time remaining in the given sporting event or, in the alternative, they would have, instead, wagered on the "Over" and won that wager, rather than losing a wager placed on the "Under."

32. For this deceptive, dishonest and unfair pattern and practice, Plaintiff seeks recovery on his behalf and on behalf of the thousands of similarly situated class members in the ten (10) states where the membership of FanDuel resides and places their wagers.

33. The App, which includes a geostationary device, requires that the members of FanDuel place a wager while located in the state where they are registered and reside. Thus, for example, an Illinois resident who placed a wager on a

given day - a time-record that is kept on the FanDuel platform App - would necessarily have been located in the State of Illinois when he or she placed their wager.

## Class Action Allegations

34. Pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the following Multi-State Class and, alternatively, State-Wide Classes or sub-classes (collectively, "Class"):

*Multi-State Class:*

a. All persons who placed a wager during the relevant period on an "Under" on a live sporting event on the FanDuel platform and App after the beginning of the sporting event and who reside in one of the following states: Illinois, New Jersey, Pennsylvania, West Virginia, Indiana, Iowa, Colorado, Tennessee, Virginia and Michigan.

b. Plaintiff also, in the alternative, brings this action on behalf of the following State-Wide Classes or sub-classes:

**Illinois Class:** All persons who placed a wager during the relevant period on an "Under" on a live sporting event on the FanDuel platform and App after the beginning of a sporting event and reside in the State of Illinois.

**New Jersey Class:** All persons who placed a wager during the relevant period on an "Under" on a live sporting event on the FanDuel platform and

App after the beginning of a sporting event and reside in the State of New Jersey.

**Pennsylvania Class**: All persons who placed a wager during the relevant period on an "Under" on a live sporting event on the FanDuel platform and App after the beginning of a sporting event and reside in the State of Pennsylvania.

**West Virginia Class**: All persons who placed a wager during the relevant period on an "Under" on a live sporting event on the FanDuel platform and App after the beginning of a sporting event and reside in the State of West Virginia.

**Indiana Class**: All persons who placed a wager during the relevant period on an "Under" on a live sporting event on the FanDuel platform and App after the beginning of a sporting event and reside in the State of Indiana.

**Iowa Class**: All persons who placed a wager during the relevant period on an "Under" on a live sporting event on the FanDuel platform and App after the beginning of a sporting event and reside in the State of Iowa.

**Colorado Class**: All persons who placed a wager during the relevant period on an "Under" on a live sporting event on the FanDuel platform and App after the beginning of a sporting event and reside in the State of Colorado.

**Tennessee Class**: All persons who placed a wager during the relevant period on an "Under" on a live sporting event on the FanDuel platform and

App after the beginning of a sporting event and reside in the State of Tennessee.

**Virginia Class**: All persons who placed a wager during the relevant period on an "Under" on a live sporting event on the FanDuel platform and App after the beginning of a sporting event and reside in the State of Virginia.

**Michigan Class**: All persons who placed a wager during the relevant period on and "Under" on a live sporting event on the FanDuel platform and App after the beginning of a sporting event and reside in the State of Michigan.

35. Excluded from the Class are FanDuel and its officers, directors, legal representatives, successors, subsidiaries, and their assigns and any judicial officer presiding over this matter, members of their immediate family, members of their judicial staff, and any judge sitting in the presiding court who may hear an appeal of any judgment entered.

36. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claim on a class-wide basis using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

37. This action has been brought and may be properly maintained on behalf of the Multi-State Class and/or State-Wide Classes proposed hereunder under Rule 23 of the Federal Rules of Civil Procedure and satisfies the numerosity,

commonality, typicality, adequacy and predominance, and superiority requirements of its provisions.

38. Plaintiff reserves the right to amend the Multi-State Class and State-Wide Classes definitions based upon information learned through discovery.

39. **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of class members is unknown to Plaintiff at this time, there are purported to be over 6,000,000 members of the FanDuel platform and App, and members of the Class can be readily identified through FanDuel's records.

40. **Commonality and Predominance. Fed. R. Civ. P. 23(a)(2) and (b)(3).** This action involves common questions of law and fact that predominate over any questions affecting individual Class members. The common questions include, but are not limited to:

    a. Whether FanDuel engaged in the conduct alleged herein;

    b. Whether the conduct engaged in by FanDuel was unfair or deceptive;

    c. Whether FanDuel violated the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505, *et seq.*, with respect to citizens of the State of Illinois;

    d. Whether FanDuel violated the New Jersey Consumer Fraud Act, 56:8-1, *et seq.*, with respect to citizens of the State of New Jersey;

e. Whether FanDuel violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.*, with respect to citizens of the State of Pennsylvania;

f. Whether FanDuel violated the West Virginia Consumer Protection Act, Article 6, § 46A-6-101, *et seq.*, with respect to citizens of the State of West Virginia;

g. Whether FanDuel violated the Indiana Unfair and Deceptive Acts and Practices Act, § 24-5-0, *et seq.*, with respect to citizens of the State of Indiana;

h. Whether FanDuel violated the Iowa Consumer Fraud Act, Iowa Code § 714.16, *et seq.*, with respect to citizens of the State of Iowa;

i. Whether FanDuel violated the Colorado Consumer Protection Act, 6-1-101, *et seq.*, with respect to citizens of the State of Colorado;

j. Whether FanDuel violated the Tennessee Consumer Protection Act, § 47-18-101, *et seq.*, with respect to citizens of the State of Tennessee;

k. Whether FanDuel violated the Virginia Consumer Protection Act of 1977, § 59.1-196, *et seq.*, with respect to citizens of the State of Virginia;

l. Whether FanDuel violated the Michigan Consumer Protection Act, § 445.901, *et seq.*, with respect to citizens of the State of Michigan;

m. Whether FanDuel breached its contract with Plaintiff and the Class;

n.  Whether FanDuel has been unjustly enriched under applicable state laws;

o.  Whether FanDuel should be required to disgorge all profits; and

p.  Whether FanDuel should be enjoined from the further operation of its betting platform and App until it repairs its platform such that it performs in a fair fashion and consistent with its promise of providing accurate real-time data for its members.

41. Each of the consumer fraud statutes from the ten (10) states where FanDuel operates its sports wagering platform, as alleged, generally prohibit deceptive or unfair acts or practices in the course of a trade or business, and grant the consumer standing to assert claims thereunder.

42. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of other Class members' claims because Plaintiff and the Class members were subjected to the same alleged unlawful conduct and damaged in the same way, *i.e.*, they all lost money to FanDuel as a result of the inaccurate real-time information provided to them while making live wagers on the FanDuel platform and using its App; conduct which is considered an unfair and deceptive act and practice; and/or against the consumer protection laws of the ten (10) states wherein FanDuel currently operates its sports betting platform.

43. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiff, and his counsel, will fairly and adequately represent the Class and have the best interests of the members of the Class in mind. Plaintiff and his counsel are

not aware of any conflicts of interest with the Class. Plaintiff's counsel are also competent and experienced in litigating federal and state court class action litigation, including experience in consumer protection claims. Plaintiff and his counsel intend to vigorously prosecute this case in the best interest of the class.

44. **Superiority. Fed. R. Civ. P. 23(b)(3).** A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the Class is impracticable. Many members of the Class are, or may be, without the financial resources necessary to pursue this matter, and even if some could afford to litigate claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning FanDuel's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

45. The Class may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because, inter alia, FanDuel acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding compensatory relief appropriate with respect to the claims raised by the Class.

46. The Class may also be certified pursuant to Rule 23(b)(3) of the Federal Rules

of Civil Procedure because questions of law and fact common to members of the Class will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Class Action Complaint.

## COUNT I

### Violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act 815 ILCS 505, *et seq.* ("ICFA").

47. Plaintiff repeats and realleges Paragraphs 1 through 46 above as Paragraph 47 of Count I.

48. Plaintiff brings this claim on his own behalf and on behalf of the Multi-State Class and the Illinois Class for a violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505, *et seq.* ("ICFA").

49. The ICFA prohibits unfair or deceptive conduct in the course of a trade or business.

50. The terms "unfair" and "deceptive" as used in the ICFA are disjunctive, not conjunctive. In other words, a practice may violate the prohibition against unfairness while not violating the prohibition against deception, and vise-versa.

51. At all relevant times, FanDuel violated the ICFA by knowingly providing data to its membership regarding the time remaining in the given live sporting event, purportedly real-time based, that was materially false, understated and/or misleading.

52. FanDuel's' practice was a deceptive practice.

53. FanDuel's pattern and practice was unfair.

54. FanDuel's pattern and practice was violative of the public policy of the State of Illinois.

55. FanDuel's practice was deceptive and an unfair practice, and violative of the ICFA.

56. Plaintiff and the Class have been damaged as a direct and proximate result of this pattern and practice as they have made and lost wagers they would not have made had they known the truthful, actual time remaining in the given live sporting event or, in the alternative, they would have wagered on the "Over" and won the wager, rather than making and losing the "Under" wager.

## COUNT II

### Violations of the New Jersey Consumer Fraud Act, 56:8-1, *et seq.*

57. Plaintiff repeats and realleges Paragraphs 1 through 46 above as Paragraph 57 of Count II.

58. Plaintiff brings this claim on his own behalf and on behalf of the Multi-State Class and the New Jersey Class for a violation of the New Jersey Consumer Fraud Act, 56:8-1, et seq.("NJCFA").

59. The NJCFA prohibits unfair or deceptive conduct in the course of a trade or business.

60. At all relevant times, FanDuel violated the NJCFA by knowingly providing data to its membership about the time remaining in a given live sporting event, purportedly real-time based, that was materially false, understated and/or misleading.

61. FanDuel's' practice was a deceptive practice.

62. FanDuel's pattern and practice was unfair.

63. FanDuel's pattern and practice was violative of the public policy of the State of New Jersey.

64. FanDuel's practice was deceptive and an unfair practice, and violative of the NJCFA.

65. Plaintiff and the Class have been damaged as a direct and proximate result of this pattern and practice as they have made and lost wagers they would not have made had they known the truthful, actual time remaining in the given live sporting event or, in the alternative, they would have wagered on the "Over" and won the wager rather than making and losing the "Under" wager.

<u>COUNT III</u>

<u>Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*</u>

66. Plaintiff repeats and realleges Paragraphs 1 through 46 above as Paragraph 66 of Count III.

67. Plaintiff brings this claim on his own behalf and on behalf of the Multi-State Class and the Pennsylvania Class for a violation of the Pennsylvania Unfair Trade Practices Act and Consumer Protection Laws, 73 P.S. § 201-1, *et seq.* ("PCPL").

68. The PCPL prohibits unfair or deceptive conduct in the course of a trade or business.

69. At all relevant times, FanDuel violated the PCPL by knowingly providing data to its membership regarding the time remaining in a given live sporting event, purportedly real-time based, that was materially false, understated and/or misleading.

70. FanDuel's' practice was a deceptive practice.

71. FanDuel's pattern and practice was unfair.

72. FanDuel's pattern and practice was violative of the public policy of the State of Pennsylvania.

73. FanDuel's practice was a deceptive and an unfair practice, and violative of the PCPL.

74. Plaintiff and the Class have been damaged as a direct and proximate result of this pattern and practice as they have made and lost wagers they would not have made had they known the actual time remaining in the given live sporting event or, in the alternative, they would have wagered on the "Over" and won the wager rather than making and losing the "Under" wager.

## COUNT IV

### Violations of the West Virginia Consumer Protection Act
### Article 6, § 46A-6-101, *et seq.*

75. Plaintiff repeats and realleges Paragraphs 1 through 46 above as Paragraph 75 of Count IV.

76. Plaintiff brings this claim on his own behalf and on behalf of the Multi-State Class and the West Virginia Class for a violation of the West Virginia Consumer Protection Act, Article 6, § 46A-6-101, *et seq.* ("WVCPA").

77. The WVCPA prohibits unfair or deceptive conduct in the course of a trade or business.

78. At all relevant times, FanDuel violated the WVCPA by knowingly providing data to its membership regarding the time remaining in a given live sporting event, purportedly real-time based, that was materially false, understated and/or misleading.

79. FanDuel's' practice was a deceptive practice.

80. FanDuel's pattern and practice was unfair.

81. FanDuel's pattern and practice was violative of the public policy of the State of West Virginia.

82. FanDuel's practice was a deceptive and an unfair practice, and violative of the WVCPA.

83. Plaintiff and the Class have been damaged as a direct and proximate result of this pattern and practice as they have made and lost wagers they would not have

made had they known the truthful, actual time remaining in the given live sporting event or, in the alternative, they would have wagered on the "Over" and won the wager rather than making and losing the "Under" wager.

## COUNT V

### Violations of the Indiana Unfair and Deceptive Acts and Practices Act, § 24-5-0

84. Plaintiff repeats and realleges Paragraphs 1 through 46 above as Paragraph 84 of Count V.

85. Plaintiff brings this claim on his own behalf and on behalf of the Multi-State Class and Indiana Class for violation of the Indiana Unfair and Deceptive Acts and Practices Act, § 24-5-0, *et seq.* ("IUDA").

86. The IUDA prohibits unfair or deceptive conduct in the course of a trade or business.

87. At all relevant times, FanDuel violated the IUDA by knowingly providing data to its membership regarding the time remaining in a given live sporting event, purportedly real-time based, that was materially false, understated and/or misleading.

88. FanDuel's' practice was a deceptive practice.

89. FanDuel's pattern and practice was unfair.

90. FanDuel's pattern and practice was violative of the public policy of the State of Indiana.

91. FanDuel's practice was a deceptive and unfair practice, and violative of the IUDA.

92. Plaintiff and the Class have been damaged as a result of this pattern and practice as they have made and lost wagers they would not have made had they known the truthful, actual time remaining in the given live sporting event or, in the alternative, they would have wagered on the "Over" and won the wager rather than making and losing the "Under" wager.

## COUNT VI

### Violations of the Iowa Consumer Fraud Act, Iowa Code, § 714.16, *et seq.*

93. Plaintiff repeats and realleges Paragraphs 1 through 46 above as Paragraph 93 of Count VI.

94. Plaintiff brings this claim on his own behalf and on behalf of the Multi-State Class and the Iowa Class for a violation of the Iowa Consumer Fraud Act, § 714.16, *et seq.* ("ICF Act").

95. The ICF Act prohibits unfair or deceptive conduct in the course of a trade or business.

96. At all relevant times, FanDuel violated the ICF Act by knowingly providing data to its membership regarding the time remaining in a given live sporting event, purportedly real-time based, that was materially false, understated and/or misleading.

97. FanDuel's' practice was a deceptive practice.

98. FanDuel's pattern and practice was unfair.

99. FanDuel's pattern and practice was violative of the public policy of the State of Iowa.

100. FanDuel's practice was a deceptive and unfair practice, and violative of the ICF Act.

101. Plaintiff and the Class have been damaged as a direct and proximate result of this pattern and practice as they have made and lost wagers they would not have made had they known the actual time remaining in the given live sporting event or, in the alternative, they would have wagered on the "Over" and won the wager rather than making and losing the "Under" wager.

## COUNT VII

## Violations of the Colorado Consumer Protection Act, C.R.S.A. § 6-1-101, *et seq.*

102. Plaintiff repeats and realleges Paragraphs 1 through 46 above as Paragraph 102 of Count VII.

103. Plaintiff brings this claim on his own behalf and on behalf of the Multi-State Class and the Colorado Class for a violation of the Colorado Consumer Protection Act, C.R.S.A. § 6-1-101, *et seq.* ("CCPA").

104. The CCPA prohibits unfair or deceptive conduct in the course of a trade or business.

105. At all relevant times, FanDuel violated the CCPA by knowingly providing data to its membership regarding the time remaining in a given live sporting event,

purportedly real-time based, that was materially false, understated and/or misleading.

106. The pattern and practice of FanDuel was violative of the public policy of the State of Colorado.

107. FanDuel's practice was a deceptive and unfair practice, and violative of the CCPA.

108. Plaintiff and the Class have been damaged as a direct and proximate result of this pattern and practice as they have made and lost wagers they would not have made had they known the actual time remaining in the given live sporting event or, in the alternative, they would have wagered on the "Over" and won the wager rather than making and losing the "Under" wager.

## COUNT VIII

### Violations of the Tennessee Consumer Protection Act, § 47-18-101, *et seq.*,

109. Plaintiff repeats and realleges Paragraphs 1 through 46 above as Paragraph 109 of Count VIII.

110. Plaintiff brings this claim on his own behalf and on behalf of the Multi-State Class and the Tennessee Class for a violation of the Tennessee Consumer Protection Act ("TCPA").

111. The TCPA prohibits unfair or deceptive conduct in the course of a trade or business.

112. At all relevant times, FanDuel violated the TCPA by knowingly providing data to its membership regarding the time remaining in a given live sporting event, purportedly real-time based, that was materially false, understated and/or misleading.

113. FanDuel's' practice was a deceptive practice.

114. FanDuel's pattern and practice was unfair.

115. FanDuel's pattern and practice was violative of the public policy of the State of Tennessee.

116. FanDuel's practice was a deceptive and unfair practice, and violative of the TCPA.

117. Plaintiff and the Class have been damaged as a direct and proximate result of this pattern and practice as they have made and lost wagers they would not have made had they known the actual time remaining in the given live sporting event or, in the alternative, they would have wagered on the "Over" and won the wager rather than making and losing the "Under" wager.

## COUNT IX

### Violations of the Virginia Consumer Protection Act of 1977
### VA ST § 59.1-196, *et seq.*

118. Plaintiff repeats and realleges Paragraphs 1 through 46 above as Paragraph 118 of Count IX.

119. Plaintiff brings this claim on his own behalf and on behalf of the Multi-State Class and the Virginia Class for a violation of the Virginia Consumer Protection Act of 1977, VA ST § 59.1-196, *et seq.* ("VCPA").

120. The VCPA prohibits unfair or deceptive conduct in the course of a trade or business.

121. At all relevant times, FanDuel violated the VCPA by knowingly providing data to its membership regarding the time remaining in a given sporting event, purportedly real-time based, that was materially false, understated and/or misleading.

122. FanDuel's' practice was a deceptive practice.

123. FanDuel's pattern and practice was unfair.

124. FanDuel's Pattern and practice was violative of the public policy of the State of Virginia.

125. FanDuel's practice was a deceptive and unfair practice, and violative of the VCPA.

126. Plaintiff and the Class have been damaged as a direct and proximate result of this pattern and practice as they have made and lost wagers they would not have made had they known the actual time remaining in the given live sporting event or, in the alternative, they would have wagered on the "Over" and won the wager rather than making and losing the "Under" wager.

## COUNT X

## Violations of the Michigan Consumer Protection Act, § 445.901, *et seq.*

127. Plaintiff repeats and realleges Paragraphs 1 through 46 above as Paragraph 127 of Count X.

128. Plaintiff brings this claim on his own behalf and on behalf of the Multi-State Class and the Michigan Class for a violation of the Michigan Consumer Protection Act, § 445.901, *et seq.*, ("MCPA").

129. The MCPA prohibits unfair or deceptive conduct in the course of a trade or business.

130. At all relevant times, FanDuel violated the MCPA by knowingly providing data to its membership regarding the time remaining in a given sporting event, purportedly real-time based, that was materially false, understated and/or misleading.

131. FanDuel's' practice was a deceptive practice.

132. FanDuel's pattern and practice was unfair.

133. FanDuel's pattern and practice was violative of the public policy of the State of Michigan.

134. FanDuel's practice was a deceptive and unfair practice, and violative of the MCPA.

135. Plaintiff and the Class have been damaged as a direct and proximate result of this pattern and practice as they have made and lost wagers they would not have made had they known the actual time remaining in the given live sporting event or, in the alternative, they would have wagered on the "Over" and won the wager rather than making and losing the "Under" wager.

## COUNT XI

### Breach of Contract

136. Plaintiff repeats and realleges Paragraphs 1 through 46 above as Paragraph 136 of Count XI.

137. By downloading the App and trading platform and agreeing to pay a fee for each wager made, FanDuel and Plaintiff (and the putative Class members) entered into a contract.

138. Pursuant to that contract, FanDuel agreed to provide truthful, accurate real-time information regarding the live sporting events available for wagering on its platform.

139. FanDuel breached that contract when it failed to provide accurate real-time trading information on its platform, as alleged herein.

140. As a direct and proximate result, Plaintiff was injured as alleged herein as well as having paid a fee for the services provided by FanDuel that it ought not have paid.

141. Plaintiff has performed all duties and obligations required on his part.

## COUNT XII

### Unjust Enrichment

142. Plaintiff repeats and realleges Paragraphs 1 through 46 above as Paragraph 142 of Count XII.

143. Plaintiff and the Class have been damaged as a direct and proximate result of this pattern and practice as they have made, and lost wagers they would not have made had they known the truthful, actual time remaining in the given live sporting

event or, in the alternative, they would have wagered on the "Over" and won the wager rather than making and losing the "Under" wager.

144. As a result of its unlawful conduct described above, FanDuel has and will continue to be unjustly enriched to the detriment of Plaintiff and Class members.

145. FanDuel has profited immensely by providing wagering guidance to Plaintiff and the Class which was false as alleged herein.

146. These profits were a benefit conferred upon FanDuel by Plaintiff and the Class members when they paid a fee for each wager they lost.

147. FanDuel will be unjustly enriched if it is allowed to retain these illegal profits, and Plaintiff, and each Class member, is entitled to recover the amount by which FanDuel was unjustly enriched at their expense.

**WHEREFORE,** Plaintiff, individually, and on behalf of the Multi-State Class and the State Classes, respectfully requests that the Court grant certification of the proposed Multi-State Class and State Classes, including the designation of Plaintiff as the named representative of the Multi-State Class and his respective State Class, the appointment of the undersigned as Class Counsel, and the designation of any appropriate issue classes and/or subclasses, under the applicable provisions of Fed. R. Civ. P. 23, and that the Court enter judgment in Plaintiff's favor, and in favor of all of those who are similarly situated, and against Defendant, BETFAIR INTERACTIVE US, LLC, d/b/a FANDUEL SPORTSBOOK, as follows:

A. Injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class Members, including but not limited to an order

prohibiting FanDuel from engaging in the wrongful, unlawful, unfair and deceptive acts as described herein;

B. An award of compensatory, consequential, and general damages, including nominal damages, as allowed by law in an amount to be determined;

C. An award of statutory and punitive damages, as allowed in an amount to be determined;

D. An award of restitution or disgorgement of profits and fees paid, in an amount to be determined;

E. An award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F. Prejudgment interest on all amounts awarded; and

G. Such other and further relief as the Court may deem just and proper under the circumstances.

**Respectfully submitted,**

ANDREW B. MELNICK,
Plaintiff

By:*/s/ Daniel J. Voelker*
One of His Attorneys

Daniel J. Voelker, Esq. (6189578)
**Voelker Litigation Group**
33 N. Dearborn Street
Suite 1000
Chicago, Illinois 60602
312.870.5430
312.254.7666
dvoelker@voelkerlitigationgroup.com

Randall B. Gold, Esq. (6190918)
**FOX & FOX, S.C.**
111 E. Upper Wacker Drive
Suite 2600
Chicago, Illinois 60601
608-258-9588
rgoldlaw@aol.com

**March 2, 2021**